THE CHANUTE BRICK AND TILE COMPANY, *Appellee*, v. THE GAS BELT FUEL COMPANY, *Appellant*.

No. 16,600.

SYLLABUS BY THE COURT.

1. CONTRACTS—*Acceptance of Benefits by One Not a Party or Assignee.* If a written contract executed by A and B be accepted by C, and acted upon by A and C, although the contract be not assigned by B it becomes the contract of C as fully as if formally assigned to him.

2. —————— *Construction—Parol Evidence.* The intention of the parties to a contract is to be determined primarily by the language employed therein, construed in its ordinary meaning. If a provision be fairly susceptible of two meanings, then the general scope and purpose of the entire transaction and all the surrounding circumstances are to be considered in determining which meaning was intended.

3. —————— *Enforcement—Fairness—Agreement Not Unconscionable.* Equity will not enforce an unconscionable contract; but the mere fact that one provision of a legal contract, or even the entire contract, is more favorable to one party than to the other does not ordinarily render it unconscionable.

Appeal from Neosho district court; S. W. BREWSTER, judge *pro tem.* Opinion filed June 11, 1910. Affirmed.

*John J. Jones,* and *James W. Reid,* for the appellant.
*H. P. Farrelly,* and *T. R. Evans,* for the appellee.

The opinion of the court was delivered by

SMITH, J.:   The findings of the court are in substance that W. B. Hill, in making the contract marked "Exhibit A," was promoting a corporation, afterward incorporated as the Gas Belt Fuel Company, and that Hill made the contract for the benefit of the gas company after it should be incorporated; that W. S. Cochrane, as trustee, was expressly acting for the plaintiff brick company; that no formal assignment of the contract was made by Hill to the defendant gas company, but the defendant accepted the contract and derived benefits therefrom, with the acquiescence of the plaintiff; that the plaintiff applied for gas within the time specified in the contract, and the defendant furnished it under the contract three or four months, and received pay therefor at the price stipulated; that the defendant then shut off the gas, and afterward a temporary contract was made; that in this temporary contract the claim of the defendant that it was not bound by the Hill contract was recognized, but it was expressly provided that the rights of neither party under it should be affected by the temporary contract.

It is contended by the defendant that the finding of the court that it accepted the contract of Hill with the plaintiff and supplied the plaintiff with gas thereunder is against the weight of the evidence; but it admits that the evidence as to this fact is conflicting.   If so, the finding is conclusive here.   The circumstance that the defendant seems to have adopted other provisions of the Hill contract and acquired substantial benefits thereunder may have been considered by the court, and properly, in determining the preponderance of the evidence.

The defendant contends that the plaintiff never performed or offered to perform the conditions of the

48—82 KAN.

contract, even if "Exhibit A" did become the contract between the two corporations, in that it never took or proposed to take all the gas used in its business. Whether it was obligated to do so depends on the construction to be given to the twelfth paragraph of the contract, especially this portion thereof:

"The . Chanute Brick and Tile Company . . . shall have all the gas it may need for the operation of its plant, but not to exceed an average of 2,000,000 cubic feet daily, and at the same price and for the same length of time as any other company or manufacturing industry interested in the pipe line."

This amounts to an express undertaking on the part of Hill to supply gas to the plaintiff, and if the defendant accepted the contract and acted thereunder it became the written contract of the latter. (*Marks v. Chumos*, ante, p. 562.)

The question then is, What does this provision mean? The defendant correctly says that the language should be interpreted in its ordinary meaning. If, so construed, it is found to be ambiguous and susceptible of two meanings, all the circumstances under which it was made should be considered in determining which meaning was intended, viz., whether it means all the gas used by the plaintiff in the operation of its plant, as contended by the defendant, or all the gas it wanted or required, as contended by the plaintiff and found by the court. The defendant in its brief, presumably in accordance with the evidence, says that at the time the contract was made the plaintiff had 1325 acres of leased gas land, with from 3,000,000 to 4,000,000 cubic feet daily capacity already developed, in addition to the leases to be assigned to Hill, and in the same field. If under these circumstances it were the intention of the parties that the plaintiff should take of the defendant all the gas used in the operation of its plant, it would have been natural to have plainly and unequivocally so provided. Under such circumstances the

plaintiff would naturally use its own gas in preference to buying, and at the same time might reasonably desire to make this provision in case at any time its gas proved insufficient. On the other hand, Hill, in the interest of his proposed gas company, would naturally desire to furnish all the gas that the plaintiff would use. Considering the language and all the circumstances, the court construed the quoted language to mean "all the gas wanted or required for the operation of its plant." We can not say that the court erred therein. Accordingly, the court found that the plaintiff had complied fully with the contract on its part. In other words, the court found that the plaintiff came into court with clean hands.

Again, it is urged by the defendant that the contract, so construed, is inequitable, in that the defendant could not make a profit in furnishing gas intermittently to supply the emergency demands of the plaintiff. Equity does not require, before enforcing a contract, that it be shown to be profitable to the party required to perform it. It is usually not necessary to invoke the action of the court to compel performance under such circumstances. Equity does refuse to enforce a contract, even though legal, in which the party seeking the redress has so far overreached his adversary that the contract is unconscionable. This provision of the contract does, indeed, seem burdensome to the defendant; but this matters little. The contract is to be considered as a whole. Considering the plaintiff and the defendant as the parties to the contract, it must be borne in mind that by its terms the defendant acquired gas leases, pipe lines and machinery for a price not to exceed $50,000, which may have proven much more valuable, and that it sold to the plaintiff $7500 worth of its stock at par value, which may have been more than its actual value. The court found that

the contract was fair and mutually advantageous at the time it was made, and the finding seems to be supported by evidence.

The judgment is affirmed.