No. 21,438.

THE LANTRY CONTRACTING COMPANY, *Appellee and Appellant,*
v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY,
*Appellant and Appellee.*

### SYLLABUS BY THE COURT.

1. REFERENCE—*Report of Referee—Motion—Appeal Taken in Time.* The
defendant, having filed a motion addressed to the district court within
three days after the decision of the referee, which motion was over-
ruled less than six months before the appeal was taken, is entitled to
a review of the rulings mentioned in that motion, although the referee
previously disposed of a motion for a new trial filed before him more
than six months prior to the taking of the appeal.

2. ARBITRATION—*Partiality of Arbitrator—Decision Not Binding.* An
arbitrator is the agent of both parties concerned, and where he mis-
conceives the functions of his agency and proceeds on the theory that
he is the special agent of one of them and endeavors to secure a re-
sult favorable to that one at the expense of the other his decision is
not binding, however honest his motives may have been.

3. CONTRACT—*Building Tunnel—Payment for "Extras" Demanded.* The
contract for building a tunnel provided that if extras were furnished
for which prices were not fixed in the contract no payments should
be made for them unless they had been ordered in writing by the chief
engineer of the defendant. Under the plans, the framework of the
roof of the tunnel was to be supported by posts resting on the floor.
The parties decided that it would be better to have short posts niched
into the walls of the tunnel instead of using longer ones resting on
the floor of the tunnel, it being agreed that the cost of the work of cut-
ting the niches for the short posts was equal to the difference be-
tween the cost of the long and the short posts and should be paid for
as lumber. *Held,* that such work was not an extra within the mean-
ing of the contract.

4. SAME—*Orders for "Extras" to be in Writing—Blueprint Sufficient.*
When the chief engineer ordered that posts should be reset in trenches
with concrete foundations, instead of on the floor of the tunnel, and
furnished a blueprint showing the plan of that work, it is deemed to
be sufficient to meet the requirement that extra work must be done
on a written order.

5. SAME—*Engineer's Estimate—Objections to be Presented in Ten Days
—Failure Excused.* One of the provisions of the contract was that
if the contractor claimed that the chief engineer in his final estimate
had failed to consider or allow for work or material, objections should
be presented by the contractor in writing within ten days after the
estimate was made, and it is held that in view of the things said and
done by the chief engineer the failure of the contractor to present

formal objections in writing within the ten-day period does not preclude a recovery on such items.

6. SAME—*Partial Payment Made—Not Accord and Satisfaction.* A final estimate with a voucher attached was sent by the chief engineer of the defendant to the contractor, without any accompanying statement, which voucher was signed by the contractor as "received on account." No check or money was tendered with the statement, and after the indorsement of the contractor qualifying the acceptance the defendant paid and the contractor received the amount named in the estimate. *Held,* that the payment and acceptance of the money cannot be regarded as an accord and satisfaction.

7. SAME—*Amendment to Petition—No New Cause of Action Stated.* The several breaches of the entire contract upon which the action was brought constitute only a single cause of action, and an amendment to the petition made more than five years after the tunnel was finished, setting up an additional item furnished under the contract, is not barred by the statute of limitations.

8. SAME — *Ambiguous Contract — Explained by Circumstances.* The terms of a contract being ambiguous and open to more than one interpretation, testimony of the circumstances surrounding the execution of the contract may be admitted to aid in its interpretation and in ascertaining the intended meaning.

9. SAME—*Findings and Judgment Sustained.* The evidence examined, and held to be sufficient to support the special findings upon which the judgment is founded.

Appeal from Shawnee district court, Division No. 1; ALSTON W. DANA, judge. Opinion filed April 6, 1918. Affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, and *William Osmond,* of Great Bend, for the appellant.

*F. Dumont Smith,* of Hutchinson, and *R. F. Hayden,* of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by the Lantry Contracting Company against the Atchison, Topeka & Santa Fe Railway Company, to recover compensation claimed for certain extra items of work done, material furnished, and expenses incurred in the construction of the Raton tunnel on the defendant's railroad, for which payment had not been made. The case was tried by a referee, and on February 21, 1916, he returned findings of fact and conclusions of law which were in favor of plaintiff as to three items of its claim. After over-

ruling defendant's motion for a new trial and certain exceptions made by each party to the findings, the referee, on February 22, 1916, filed in the district court his report of the proceedings before him, including his decision. The next day defendant filed in that court its motion for a new trial, as well as certain exceptions to the findings and conclusions of the referee, and on the following day plaintiff filed certain exceptions to the findings and conclusions of the referee. These pended in the district court until January 15, 1917, when the motions were all denied, the report of the referee was confirmed, and judgment was rendered thereon in favor of plaintiff. Two days later the defendant filed another motion for a new trial, which the court denied, and on May 21, 1917, the defendant appealed to this court. A cross appeal is taken by plaintiff from the order of the trial court overruling certain of its exceptions to the findings and conclusions of the referee.

Plaintiff contends that the questions presented are not open to review, because the appeal was not taken within six months after the motion for a new trial was decided. The original abstract failed to show the filing of the motion for a new trial addressed to the court on February 23, 1916, two days after the decision by the referee. When attention was called to the omission, a supplemental abstract was filed showing the filing of the motion on the day stated, and further, that it had been presented to the court and taken under advisement on July 6, 1916, and that a decision overruling the motion was made on January 15, 1917, about four months prior to the taking of this appeal. The grounds of that motion include all the questions that are raised on this appeal, and hence they may be reviewed.

The referee found, and the court adjudged, that the plaintiff was entitled to recover $15,646, over and above the allowance made and paid by the defendant, with interest from July 10, 1909, amounting in all to $22,895.16. This award included an item of $2,443.22, with interest thereon, for the setting of stulls, as to which there was an agreement. Another was for $3,140.50 for resetting posts on new foundations of the tunnel lining, which was done on orders and plans given and provided by the chief engineer of the defendant. Then there

was still another item of $10,063, with interest, for lumber used in the tunnel beyond that allowed in the final estimate of the chief engineer. A claim was also made by the plaintiff for a large sum expended by it in the transportation of coal, which it insists should have been carried by the defendant without charge; but this claim was disallowed by the referee, and upon this ruling the cross appeal is based.

The contention of defendant is that the claims for extra work and material were to be left to the decision of the chief engineer, who was appointed by the parties to give a final decision upon any disputes that might arise, and who, under the contract, was required to make a final estimate of the amount, quantity, and character of all work and material performed and furnished by the contractor, including extra work and material, and that his decision should be final and conclusive and have the effect of an award; and further, that if the contractor should claim that a mistake had been made in the estimate or decision of the chief engineer the contractor should present its objections in writing within ten days after the final estimate was made. It is contended that the plaintiff had failed to comply with these requirements as to disputed items or to prove that they had been waived by the defendant. The plaintiff, on the other hand, insists that the action of the chief engineer in disallowing its claims was not effective, because he acted as the agent of the defendant and not as an impartial arbiter between the parties, that his decisions were the result of partisanship, and therefore were not binding. There is no claim that the chief engineer acted fraudulently, but merely that he misconceived the functions of an arbiter and failed to understand the duties incumbent upon him, and proceeded on the theory that it was still his duty to act as agent for the defendant and to secure the best terms of settlement that he could obtain for it. The referee found, and we think upon sufficient evidence, that he "mistook his position as that of an agent of the defendant for the purpose of securing a settlement in its interest. He did not in all matters exercise his own judgment, but as to some advised with the legal department of defendant, and held himself subject to the orders of defendant's superior officers, and dictated terms of settlement conditional on the plaintiff beginning or abstaining from suit;

but there is no evidence that in so doing or in passing on any of plaintiff's claims the engineer was actuated by any fraudulent intent." An arbiter is the agent of both parties alike, and should be as much concerned in the protection of the interests of one party as of the other, giving his decisions with absolute impartiality. Because of his relation to the defendant, the chief engineer seemed to feel that it was incumbent upon him to act as the agent of the defendant in the settlement, much as he would if he had not been named as the arbiter. Although conscientiously honest in his motives, his mental attitude was inconsistent with the state of mind which an impartial arbiter should have. The decision of an arbiter who fails to understand his functions and duties, and who acts as a partisan of one of the parties, is not binding, however honest his motive may be. (*Downey v. Railroad Co.*, 60 Kan. 499, 57 Pac. 101.)

An attack is made on the findings that the plaintiff was entitled to recover on its claims for setting stulls and resetting posts. It is based on noncompliance with the provision of the contract that if extra work is done for which prices were not fixed in the contract the chief engineer should give a written order for the doing of such work and should fix the prices to be paid, and that the obtaining of the engineer's certificate for such work and the prices therefor should be a condition precedent to the contractor's right to be paid therefor, and that nothing should be deemed extra work which could be measured or estimated under the terms of the contract. It appears that part of the construction of the tunnel consisted of upright posts or piles supporting the timbers upon which rested the framework for the roof of the tunnel. In places it was decided to be more convenient and better to substitute, in place of these posts, short pieces of timber called stulls, which, instead of resting upon the floor of the tunnel, were placed in a slanting position and rested in a niche cut in the wall. It was agreed that the stull answered the purpose of a post and that the work of cutting the niche in the rock on which the stull rested was the equivalent of the difference in the amount of lumber between a stull and a post. This difference was treated as lumber and was thereafter carried in the estimate as lumber down to the final estimate. The substitution of one kind of

support for another by agreement cannot be treated as an extra, since the plan did not increase or in anyway affect the price to be paid for the supports. There was not only the agreement that the work of cutting niches should equal the difference between the short and the long posts and should be carried as lumber in the estimates, but for months it was so carried in the regular estimates, and payment thereon was partly drawn by the plaintiff.

In respect to the item allowed for resetting posts, it appears that after the timbers of the tunnel had been placed it was decided that there should be a concrete foundation along the sides of the tunnel in order to support the concrete lining of the tunnel. The chief engineer ordered the work and submitted a blueprint directing how it should be done, and afterwards caused the work to be done under the superintendence of a local engineer. In the contract it was agreed that plaintiff should receive $45 a thousand for all lumber placed in the tunnel, and after the work was commenced the defendant notified the plaintiff that it would only allow $25 a thousand for lumber reset or used a second time. A trench along each side .of the tunnel had to be made for the foundation for the posts, and as the work proceeded it was necessary to remove and then reset the posts. On the basis of $25 a thousand feet for lumber used a second time, the plaintiff submitted its claim for the work, and while defendant did pay for the excavation and cement work done under the plan, it refused to pay for the resetting of the posts. A formal writing ordering this extra work was not made, but the blueprint set forth the details of the work and is deemed to be sufficient, under the circumstances, to meet the requirement that extra work must be done under a written order. An explanation of the blueprint was doubtless necessary to a complete understanding of it, and this was furnished by the oral directions of the chief engineer and his assistant under whose supervision the written plans were executed.

There was much contention as to the final estimate and the conduct of the parties with reference to it. It was stipulated that when the chief engineer made a final estimate at the completion of the work any objections of the contractor to it were to be presented in writing within ten days after the estimate

had been made and certified, and objections not so made should be deemed to be waived. The plaintiff never presented any written objections to the final estimate, but in view of the conduct of the parties the defendant is not in a position to claim a waiver on account of the absence of a formal objection. The tunnel was completed in June, 1908, and up to that time sixteen monthly estimates had been made and proportional payments made thereunder. Several disputes had arisen between the contractor and the chief engineer as to the amount due to the contractor, and correspondence and conversations were frequently had between them on these matters. It appears that the chief engineer did not prepare a final estimate until November 11, 1908, about five months after the completion of the work, and it was not signed nor certified by any one, nor was it given to or shown to any officer of the plaintiff until in January, 1909. At that time it was sent to Mr. Kelly, the chief officer of the plaintiff. Following these transactions, conferences were had and an effort was made to adjust the differences between the parties, and some time after the presentation of the final estimate one claim in dispute, amounting to $2,400, was adjusted and paid. In a conference with Mr. Kelly, prior to the receipt of the final estimate, the chief engineer, who had made out two estimates, in effect, told Mr. Kelly: Here is the final estimate I am going to make if you are going to sue the company; and if you do not intend to sue, here is the final estimate I am going to make. There was about $10,000 difference between the two estimates. On June 4, 1909, the defendant sent to Mr. Kelly a paper entitled, "Seventeenth Monthly and Final Estimate," with a voucher attached, which had been O. K'd by the chief engineer and the auditing officers of the defendant, calling for the payment of $33,072.21 as the balance due the contractor. This was much less than the amount claimed by the plaintiff, and Mr. Kelly signed and returned the estimate and voucher to the treasurer of the defendant on June 8, 1909, but he inserted in the receipt the words, "Received on account." Shortly afterwards the defendant paid the plaintiff the amount named in the voucher with the qualified acceptance, less $6,000 withheld on account of a garnishment proceeding, and the further sum of $6,000 that had been paid in January, 1908, to a bank in Paola. Subsequently

the garnishment was dissolved, and the $6,000 withheld on that account, and which had been placed in a special deposit, was paid to the plaintiff. ' In view of the facts stated, and the important one that the chief engineer had abandoned his function as an arbitrator and was acting as the representative or agent of the defendant, the plaintiff was not bound to present his objections on matters in dispute to him within ten days after the receipt of the final estimate or at any other time. The misconception of duty and partisanship of the chief engineer, although innocent, released the plaintiff from any obligation to recognize and treat him as an arbitrator. (*Downey v. Railroad Co.*, 60 Kan. 499, 57 Pac. 101; *Orme v. Burney*, 95 Ga. 418; *Grosvenor v. Flint*, 20 R. I. 21; *Wheeling Gas Co. v. The City of Wheeling*, 5 W. Va. 448; 3 Cyc. 625.)

One of the contentions of defendant is that a final settlement was made, and that when the final estimate with a voucher attached was signed by Mr. Kelly and payment thereon accepted, it constituted an accord and satisfaction which is conclusive on plaintiff. The sending of the estimate and voucher was only a step in the numerous negotiations between the parties as to the amount due for the work. In signing the voucher the defendant was distinctly informed by plaintiff that it would not accept the amount named in the estimate as the amount due, but would accept it as a partial payment. With this qualification and warning the defendant subsequently paid the money specified in the estimate. Under the circumstances, the money was paid and received on account and not as a final and complete satisfaction of the debt. No check or money accompanied the estimate, nor was there any statement with it that the subsequent acceptance of payment would be regarded as payment in full. Nothing connected with the sending of the estimate and the qualified signing of the voucher amounted to an acknowledgment that the payment was to be regarded as a full discharge of defendant's obligation. Besides, the payment was not made or received on the estimate until the fact that the plaintiff would only receive the amount as partial payment had been clearly brought to the attention of the defendant. The case was quite unlike one where a check or money is tendered in full satisfaction of a claim, and where the creditor is informed and bound to under-

stand that if the tender is accepted he will take it as a complete settlement of the claim. The facts herein do not bring the case within the rule of the cited case of *Neely v. Thompson,* 68 Kan. 193, 75 Pac. 117, where the tender was accompanied with acts and declarations which amounted to a condition that if the money be accepted it would be accepted in full satisfaction. Here, as we have seen, the estimate and voucher were not presented on the condition that payment must be accepted in full, if at all, and the money was subsequently paid with a notice that plaintiff did not accept the estimate nor payment as a satisfaction of its claim, and therefore there was no accord and satisfaction.

There is a contention that the item for lumber, brought into the case by an amendment of the petition, and for which an allowance was made, was barred by the statute of limitations. The amendment was filed more than five years after the completion of the tunnel. Objection was made to the amendment on the theory that it set up a distinct claim or cause of action not included in the original petition, and that it could not be tied to the original by the doctrine of relation. The general rule is that when an amendment does not set up a new cause of action the statute of limitations is arrested at the date of filing the original petition. In the original pleading the contract was set forth and its performance by the plaintiff, followed by allegations of the failure of the defendant to comply with its requirements in several particulars, including the failure to furnish transportation of coal and lumber, a failure to pay for extra work and extra lumber for supports made necessary by changes of plans, and also the value of lumber under an agreement as to the stulls already described. Later, and after the trial had commenced, the plaintiff in its amendment alleged that the defendant had not allowed or paid for 227,000 feet of lumber which was used in the construction of the tunnel, and it was asked that this item be added to the judgment. The action was based upon the contract, and the pleading did not purport to contain more than one cause of action. The contract provided for the construction of a tunnel as an entirety, and an action to recover for noncompliance with its terms states only a single cause of action. The fact that the defendant failed to pay for a

number of the items in the contract does not make it necessary to set up each item as a separate cause of action. Under the contract the defendant became liable for all work and material furnished in the building of the tunnel, and noncompliance with its provisions, although made up of many items, constitutes one cause of action. This was decided in *Comm'rs of Barton Co. v. Plumb,* 20 Kan. 147, an action brought upon a bond given to secure the performance of a building contract, and in which it was alleged that one of the parties failed to build the structure within the agreed time and also failed to provide suitable material in its construction and to do the work in a specified way. The court held that, although the action involved numerous details and many items of noncompliance, the petition stated only one cause of action. It was said that the plaintiff possessed one grand primary right to have the house built according to contract, within which were innumerable subordinate and secondary rights, such as the furnishing of lumber, glass, nails, locks, hinges and the like, and the failure with respect to any of them would be a violation of the plaintiff's rights; "but," it was said, "the violation of each of these special and subordinate rights is also a violation of the more general and primary right, and altogether they constitute only one violation of this grand primary right." (p. 151.) The amendment in question did not present a new cause of action, but only asked an allowance for another item used in the making of the tunnel under the violated contract. The original pleading had asked a recovery of some lumber, and the amendment expanded the cause of action by adding an omitted item in the lumber account, and therefore it relates back to the commencement of the action. In the cited case of *Kansas City v. Hart,* 60 Kan. 684, 57 Pac. 938, it was said that "it is true, as a general rule, that amended pleadings relate back to the commencement of the action, but this rule never obtains where a separate and distinct cause of action is set up by way of amendment." (p. 691.) Here, however, the amendment does not allege a new cause of action, nor is the item asked for founded on a new right. In such cases the rule as to amendments is liberally applied in this state. For instance, an amendment was allowed of an allegation of an express war-

ranty under a petition which claimed damages because the property proved to be unfit for the purposes intended. (*Culp v. Steere,* 47 Kan. 746, 28 Pac. 987.)  So, also, was one specifying new grounds of negligence in a personal-injury case. (*Railway Co. v. Moffatt,* 60 Kan. 113, 55 Pac. 837.)  The substitution of a new plaintiff by amendment, it was held, did not change the cause of action, and the statute of limitations did not run against the substituted party during the pendency of the action. (*Service v. Bank,* 62 Kan. 857, 62 Pac. 670; *Harlan v. Loomis,* 92 Kan. 398, 140 Pac. 845.)  It was also held that an amendment charging the conversion of the proceeds of personal property, where the original charged the conversion of the property itself, was allowable.  (*Bank v. Layfeth,* 63 Kan. 17, 64 Pac. 973.)  Some of these and a number of other like authorities are mentioned in *Cunningham v. Patterson,* 89 Kan. 684, 132 Pac. 198, in which an allegation that a death was negligently caused in another state was amended after the period of limitation by setting out the statute of the foreign state authorizing a recovery.  In *Madden v. Smith,* 28 Kan. 798, it was held that where there is a single contract, only one action can be maintained for a breach thereof, and a subsequent action for an additional item under the same contract cannot be maintained.  In *Whitaker v. Hawley,* 30 Kan. 317, 1 Pac. 508, it was held that all the several breaches of a single and entire contract, after such breaches had actually occurred, constitute only one cause of action, and this although an action might be maintained upon each of such breaches as it occurred and before any subsequent breach occurred.  It was held in an action for damages to specific articles of personalty, resulting from a tort, that an amendment may be made by setting forth damages to other articles of personalty caused by the same tort and at the same time. (*City Council of Augusta v. Lombard,* 99 Ga. 282.)  Where damages were asked for digging up the bodies of plaintiff's parents and removing them from a cemetery lot and then burying other bodies on the lot, an amendment was permitted after the limitation had run, claiming $400 damages as the cost of returning the bodies to the lot and restoring the monument and shrubbery on the lot. (*Anderson v. Acheson,* 132 Iowa, 744.)  In *Coxe v. Tilghman,*

1 Whar. (Pa.) 281, an amendment assigning new breaches of a contract on which an action had been brought and making an alteration in the grounds of recovery on that instrument and the modes in which the defendant had violated it, was held to be permissible. In *Wilhelm's Appeal,* 79 Pa. St. 120, it was held that a petition asking an account of ores taken from a tenancy in common might be amended seven years afterwards by alleging that ores had been taken from other lands, and it was held that a new cause of action was not alleged and the amendment was not barred. (See, also, *Bond v. Sewing Machine Co.,* 23 Kan. 119; *North Shore St. Ry. Co. v. Payne,* 192 Ill. 239; *Cooper, Adm'r, v. Mills County,* 69 Iowa 350; *Sullivan v. Owens,* [Tex. Civ. App. 1905,] 90 S. W. 690; *Bentley v. Insurance Co.,* 40 W. Va. 729; Notes, 3 L. R. A., n. s., 259, 275; 33 L. R. A., n. s., 196.)

Defendant insists that the evidence was insufficient to sustain the finding of the referee making an allowance for the lumber item, and also as to the other items that were allowed; but, after a critical examination of the evidence, we have no hesitation in saying that the findings of the referee have sufficient support. It is manifest from the findings that the referee gave careful attention to the evidence and that his conclusions were drawn with discriminating judgment.

Plaintiff, in its cross appeal, contends that coal is material, and that under the contract defendant was to furnish free transportation of material required in carrying out the contract. The meaning of the term *material* as used in the contract is not free from doubt, but it is insisted that the exceptions enumerated in the contract as to materials—to wit: feed for teams and men, commissary supplies and explosives—indicate that all other materials than these were to be carried free. In *Philadelphia, Appellant, v. Malone,* 214 Pa. St. 90, a contractor who had undertaken the construction of a reservoir gave a bond which required that all materials furnished for the work should be paid for, and it was held that coal used to generate steam for the operation of a steam shovel and a locomotive in making the excavations was not within the obligation of the bond. Of like import, is *Lyman Coal Co. v. U. S. Fidelity & Guar. Co.,* 82 Vt. 94. Regardless of these

Jeffries v. Elevator Co.

interpretations, however, there was ambiguity in the contract as to whether coal to be used in the digging of the tunnel was intended to be included in the term *material*, and therefore testimony was rightfully received to aid in ascertaining the intention of the parties.  It has been said:

"The intention of the parties to a contract is to be determined primarily by the language employed therein, construed in its ordinary meaning.  If a provision be fairly susceptible of two meanings, then the general scope and purpose of the entire transaction and all the surrounding circumstances are to be considered in determining which meaning was intended." (*Brick Co. v. Gas Co.*, 82 Kan. 752, syl. ¶ 2, 109 Pac. 398.)

(See, also, *Brown v. Shields*, 78 Kan. 305, 96 Pac. 351; *Royer v. Silo Co.*, 99 Kan. 309, 161 Pac. 654.)

The testimony introduced was sufficient to satisfy the referee that the term used was not intended by the parties to include the coal used in the excavation.  In the negotiations between the parties the bid appears to have been made upon the theory that coal sufficient for the purpose would be found as the excavation of the tunnel proceeded.  The evidence was sufficient to sustain the finding of the court that free transportation for coal was not within the contemplation of the parties in the making of the contract.

Other objections are not deemed to be material, and, finding no error in the record, the judgment is affirmed.