No. 29,330.

FRANK JOLLEY, *Appellee*, v. THE UNITED POWER AND LIGHT
CORPORATION, *Appellant*.

(289 Pac. 962.)

Opinion
filed July 5, 1930.

*Lee Judy*, of Kansas City, for the appellant.

*Matt Guilfoyle*, of Abilene, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: This was an action for damages in which plaintiff charged negligence on the part of defendant. Plaintiff recovered judgment, and defendant appeals.

The record shows that at the time plaintiff was injured on August 30, 1928, he was in the employ of a corporation known as the United Telephone Company; that he was engaged in working on the telephone lines of that company, and on the date of the injury went to an underground manhole belonging to the company for the purpose of doing certain repair work on the wires at that point. He had a fellow workman with him. When the cover was lifted from the manhole the plaintiff smelled to see if there was any odor or

foul air in the hole. He smelled something and knew there was a foul smell of some sort. He and the fellow workman then sat down and waited to permit the air to become fresh in the manhole. He took a canvas and dropped it down into the hole and fanned it back and forth to circulate the air. The manhole was eight by four feet and about six feet deep. There were two conduits running into the hole about four feet from the bottom. Plaintiff testified that after waiting about thirty minutes he went back but didn't smell anything; that he supposed it was safe to go into the hole and did so; that he had been working there some five or ten minutes and did not smell anything nor feel any ill effects. The helper, who was outside the manhole, handed him a blow torch and an explosion followed immediately. The plaintiff was badly burned as a result of the explosion. He was taken to a hospital, where he remained some time.

It appears from the record that both the plaintiff and the United Telephone Company, his employer, were under the workmen's compensation law; that the telephone company paid him, or advanced him, his wages after his injury and until he returned to work on November 30, 1928. The telephone company also paid plaintiff's doctor bill and hospital bill. All of these payments were made out of what a representative of the telephone company called a "benefit fund." The telephone company reported the accident to the workmen's compensation commissioner on the forms prescribed for that purpose. It does not clearly appear that the telephone company and the plaintiff regarded the amounts advanced him as compensation. No proceedings seeking compensation were ever instituted by plaintiff nor was any agreement made between him and his employer, except as hereinafter noted. There was introduced in evidence a written agreement dated February 1, 1929, about five months after the injury, which was attached as exhibit A to the reply of plaintiff, and which reads:

"Agreement.

"Pursuant to the oral agreement heretofore made between Frank Jolley and the United Telephone Company, and for the purpose of setting forth that agreement in writing, Frank Jolley hereby states:

"That he waives all right to workmen's compensation against the United Telephone Company by reason of the accident which he received while working at Salina, Kan., on or about August 30, 1928, and hereby releases the United Telephone Company from all liability by reason of said accident.

"In consideration of which the United Telephone Company waives its

right of subrogation to any claim for damages which Frank Jolley may have against any other person or corporation by reason of said accident.

FRANK JOLLEY.

THE UNITED TELEPHONE COMPANY.

By FRED COULSON, *Secy."*

It appears that the above agreement was entered into for the purpose of reducing to writing an oral agreement made just before Christmas of 1928 between the plaintiff and a representative of the telephone company.

The appellant urges upon this appeal that plaintiff is not entitled to maintain this action; that if there is a cause of action against the defendant company it has become vested by operation of law in his employer, the United Telephone Company. Appellant bases this contention upon section 4 of chapter 232 of the Laws of 1927, which reads:

*"Remedy against employer or negligent third party.*—When the injury or death for which compensation is payable under this act was caused under circumstances creating a legal liability against some person other than the employer to pay damage, the injured workman or his personal representative shall within ninety (90) days of the date of receiving said injury elect whether to take compensation under this act or to pursue his remedy against such other person. Such election must be in writing and must be delivered to the employer in person or by registered mail, and the acceptance of compensation by an injured workman shall be construed as a positive election to accept compensation under this section. Failure on the part of the injured employee or his personal representative to file a written election with the employer within ninety (90) days that he will pursue his remedy against the negligent third party shall operate as an election to accept compensation and as an assignment of any cause of action in tort which the employee or his personal representative may have against any other party for such injury or death, and such employer may enforce in his own name, or the name of the workman, the liability of such other party for their benefit as their interests may appear."

The appellant contends that both the alleged oral agreement made before Christmas and the written agreement dated February 1, 1929, were more than ninety days after the date of plaintiff's injury and that both are therefore ineffectual to permit plaintiff to bring this action for damages; that by virtue of the statute above quoted the cause of action, if any, against the defendant had become vested in the telephone company. Appellant urges that the provision requiring election to be made by the employee in ninety days is mandatory and cannot be waived; that the cause of action having been vested thereby in the employer, plaintiff is not a proper party in interest; that plaintiff had no right to bring this action and that

necessarily judgment must be entered herein in favor of the defendant.

The situation which exists where an injury was caused by the acts of a third party is dealt with in the former compensation law under R. S. 44-504. Under the old act the workman could pursue both remedies; that is, he could pursue his action for compensation and also his action against the third party, subject to the condition, however, that he was not entitled to recover both. This provision in the old law was upon the old legal principle that one cannot be made whole more than once.

Construing the former statute, R. S. 44-504, *supra,* in the case of *Moeser v. Shunk,* 116 Kan. 247, 226 Pac. 784, this court said:

"Whether the injured employee or his dependents recover compensation from the employer or damages from a wrongdoing third party is hardly an election of remedies as that term is ordinarily used in the law. The workmen's compensation law fixed the liability of an employer to his employee where both parties are under the law, and this liability is founded upon the contract of employment and the statute. The liability in no sense depends upon tort. It is a liability growing out of contract, the terms of the statute being embodied in the contract. As between the employer and employee the remedy provided by the workmen's compensation law is exclusive. The injured employee or his dependents must recover upon the contract of employment, which includes the provisions of the workmen's compensation act. (*Shade v. Cement Co.,* 92 Kan. 146, 139 Pac. 1193; *McRoberts v. Zinc Co.,* 93 Kan. 364, 144 Pac. 247.) The statute does not attempt in any way to determine the rights or liabilities of the employee in respect to a person not his employer. It does not repeal the statute providing for an action for wrongful death (R. S. 60-3203), nor does it take away from an employee his common-law right of action for injury to the person against one not his employer who by negligence has caused the death or injury. When one not the employer causes injury to a workman it is really none of his concern whether the person injured has an estate, or has life insurance or accident insurance, nor what his contract of employment may be with his employer; these things neither increase nor decrease his liability. To hold otherwise would, in a sense, be to license reckless persons negligently to injure an employee working under the compensation act without liability, though a similar injury to another person would create liability. . . . There is no privity of liability between the employer and the wrongdoing third party. The employer is liable under his contract with his employee, which contract, the statute, specifically provides the measure of his liability without regard to any negligence or wrong on his part; while the wrongdoing third party is liable only in tort and for his wrong and negligence resulting in injury or death, and the elements of damage include pain and suffering as well as financial loss."

See, also, *Swader v. Flour Mills Co.,* 103 Kan. 378, 176 Pac. 143; *Riddle v. Higley Motor Co.,* 122 Kan. 458, 252 Pac. 231.

In *Stamps v. Railroad Co.*, 114 Kan. 477, 218 Pac. 1115, it appears that the employer had paid compensation to an employee for a period of six months and then discontinued. Plaintiff began an action against a third party who caused his injury and also instituted an action against the employer for compensation. The employer consented to arbitration and there that proceeding rested. In discussing the situation the court said:

"The employer could not fix the amount of compensation by making a few payments which the workman accepted, and compensation has not been ascertained, settled or provided for by agreement, arbitration, action or conduct of the parties. The statutory election is not between proceedings, but between compensation, agreed to or established, and damages. The workman can receive but one satisfaction. This was plainly stated in the cited case. (*Swader v. Flour Mills Co.*, supra.) But, as the court held, he is not required to elect until he knows definitely which source of recompense for his injury is more advantageous. Meanwhile it is of no concern to the wrongdoer that some payments are made and accepted by way of compensation. His liability for damages is not abated, and should the workman recover and receive compensation in full the liability subsists in favor of the person paying the compensation, who, by express terms of the statute, is subrogated to the workman's right to damages to the extent of compensation paid." (p. 478.)

In *Arthun v. Seattle*, 137 Wash. 228, 242 Pac. 16, which was an action by an employee against a third party for injury caused by the third party, in discussing the question the court said:

"The injury to the respondent was caused by the alleged negligence of another not in the same employ, creating the right of a common-law action against the wrongdoer, unless there is something in the workmen's compensation act which directly or by necessary implication is in derogation of that right. . . . Our attention has not been called to any provision of the act, nor do we find, under which it is or can be claimed that there has been any purpose or attempt to limit, modify or cancel the common-law liability of a third party because of its tortious injury of a workman. The law does him no harm, nor does it purport to help or relieve him. He contributes nothing to the fund it provides for, nor does he make any report to the commission that administers it. He is entirely without the scope of all its benefits. . . . It is for the benefit of the state in administering the accident fund [in Washington the workmen's compensation is paid out of a fund provided by the state] that provision is made for election to be in advance of any suit under this section, and not at all for the benefit of the third party, who is at all times suable as at common law by the injured party, or the state as assignee of the injured party." (pp. 230, 231.)

In the above opinion the court cites *Lester v. Otis Elevator Co.*, (N. Y.) 169 App. Div. 613, 524, and quotes therefrom as follows:

"It seems to me, therefore, that the requirement that the employee give evidence of his election to sue was intended solely for the benefit of the person liable for the statutory·compensation, and was not intended to curtail or affect the existing remedies of the employee against. the third party. Section 29 fully recognizes the common-law remedy of the employee, and there is nothing in the statute to indicate that the legislature intended that it should be affected." (p. 618.)

It is clear that the statute under consideration is one intended purely for the benefit of the employer and employee. Its purpose is to establish a definite arrangement between them where there is a cause of action against a third party for negligence. The statute is apparently intended to make a definite disposition of a cause of action against a third party as between the employer and employee, but it does not go so far as to attempt to make this disposition irrevocable. It does not prohibit the employer or employee from dealing with reference thereto even though the ninety-day period has elapsed. As pointed out in the Moeser case, *supra,* it is no concern of the third party what the employer or employee does with reference to a cause of action against the third party. No matter what they may do, the liability of the third party cannot be increased nor diminished by any action of theirs. The third party is in no way prejudiced by the failure to observe the provisions of the statute. The employer and the employee may, if they see fit, waive the ninety-day provision in ,the statute, and so long as they are satisfied with their dealing as between themselves the matter is of no concern to the third party who has wrongfully injured the employee. We hold, therefore, that the contract of February 1, 1929, made between the employer and the employee is valid and that the plaintiff had a right to maintain this action.

The appellant also contends that no negligence was proven by appellee showing appellant guilty of neglect in permitting gas to escape from its mains, and that the trial court erred in overruling its demurrer and in refusing to instruct the jury to return a verdict in favor of the defendant. In support of this contention appellant urges that the plaintiff pleaded as a ground of negligence that "the said defendant negligently and carelessly allowed its gas pipes to become old and worn out and defective so as to permit the gas to escape therefrom"; that the uncontradicted proof is that the leak was caused by a pipe being broken as a result of expansion and contraction and that the pipe where broken was not old or worn

out, but showed a clean break due to expansion and contraction—a thing which, according to witnesses, was unavoidable.

As against this argument is must be noted, however, that plaintiff alleged other grounds of negligence, namely, that the fire and explosion were caused by gas which the defendant had negligently and carelessly allowed to escape from its lines; that the gas had been escaping from these lines for several months and that the defendant knew or should have known that there was a hole in its gas mains or pipes. It appears from the record that it was not disputed that a pipe was broken and gas was escaping therefrom near the manhole. It appears further that one witness, a neighbor living near the scene of the explosion, testified that she smelled gas when the wind was in the right direction about four weeks before the accident; another witness, also a neighbor, testified she talked with employees of the gas company and asked them why they did not find the leak sooner, because her trees near the pipe lines were dying, and they said they were looking for it, but could not locate the leak. In addition there was considerable evidence concerning the trees, grass, flowers and shrubbery near the point where the gas was escaping to the effect that these all showed indications of dying; that such indications as shown by the trees, grass, shrubbery and flowers are always present when affected by leakage of gas; that this condition of the trees, grass, flowers. and shrubbery near the point of the leakage had been evident for a month or six weeks prior to the accident. Also, that trees, grass and shrubbery further away did not show such ill effects.

There was ample evidence of negligence to sustain the verdict.

The appellant urges that the verdict was excessive. The verdict as brought in by the jury was for $10,539.20. Upon the hearing of the motion for new trial the court was of the opinion that the amount was excessive and suggested to plaintiff's counsel that if he would consent that the amount be reduced $3,500 the court would render judgment for the remainder; or if plaintiff would not consent to such remittitur he would order a new trial. Plaintiff consented to the remittitur and the judgment now stands at $7,039.20.

It is clear from the record that plaintiff was severely burned and that his sufferings were of a most intense character. From the physician's testimony it appears that plaintiff was in such a state that the physician declined to administer an opiate to relieve his pain for fear it would result in plaintiff's death. The severe burns

have left marks and scars which are noticeable and in addition thereto it appears that the tops of both plaintiff's ears have sloughed away and he now has that physical deformity.

As has often been said by the court, the trial judge who presides over the trial hears the testimony, sees and observes the plaintiff, and is in a better position to determine the reasonableness of the verdict than the appellate court.

Having carefully examined the record, this court is unable to say that the amount of the verdict is so excessive as to show that it was rendered under the influence of passion and prejudice. It does not clearly so appear. It is not a case coming within the authorities cited by the appellant in which this court has reduced or set aside verdicts on the ground that they were excessive. We see no just ground for disturbing the verdict as approved by the trial court.

Other specifications of error urged by the appellant have been examined and we find no reversible error therein.

The judgment is affirmed.