No. 30,131.

Laura Early, as an Individual and as Guardian of John Early, Edward Early and William Early, Minors, *Appellee*, v. C. L. Burt, *Appellant*.

(7 P. 2d 95.)

Opinion filed January 30, 1932.

*J. S. Simmons, Alva L. Fenn, Max Wyman, C. M. Williams, D. C. Martindell* and *W. D. P. Carey*, all of Hutchinson, for the appellant.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson, H. T. Horrell,* all of Wichita, *A. C. Malloy, R. C. Davis, Warren H. White,* all of Hutchinson, *Ezra Branine* and *Alden Branine,* both of Newton, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by the defendant C. L. Burt, a contractor, from a judgment against him for $9,000 in favor of Laura Early, and Laura Early as guardian of the persons and estate of John, Edward and William Early, minors, as damages for the negligence of the defendant which caused the death of John Early, the husband of Laura Early and father of the minors.

The questions involved are, whether the action is barred by the two-year statute of limitations, whether the negligence of the defendant or that of the city of El Dorado was the proximate cause of the death, whether the deceased was guilty of contributory negligence, whether the rights of the parties were in any way governed or affected by the workmen's compensation law, and whether or not some of the instructions given were erroneous.

The defendant Burt had entered into a contract with the city of El Dorado to construct a sewer for the city. The work was to be done under the supervision of the city engineer, and the contract provided for changes or modifications of the plans, and required the defendant to use every precaution to prevent harm or accident and to assume all liability for damages accruing from any accident which may be due to carelessness, omission or neglect.

The sewer, as originally planned, approached the manhole in the center of Towanda street directly from the south, but it was ordered changed by the city engineer so that it reached and touched that street on the south several feet east of the original location and crossed the south half of the street to the manhole in a diagonal northwesterly direction, making a cut in the cement slab 34 feet in length and about 25 or 30 inches in width. When the sewer pipe was laid and connected, the trench was filled with earth and tamped but not watered, the dirt being piled about four inches above the level. This work was done partly by the city force and partly by the employees of the contractor. It was finished November 22 and the contractor received his compensation for this extra and other work shortly thereafter. Where the automobiles crossed the ditch the dirt packed. Some new dirt was added by some one, but when it rained, about the first of February, it sank much more and

at the time of the accident on February 4 the dirt in the trench was about four inches below the level at the usual crossing places and less elsewhere.

The deceased was the motorcycle policeman for the city of El Dorado and was proceeding in the course of his duties west on Towanda street at about 9:30 p. m., when in attempting to cross ·this cut in the pavement he was thrown upon the pavement, fracturing his skull and otherwise injuring him, from which injuries he died about an hour and a half later.

The amended petition alleges nine acts and omissions .of negligence. The answer, in addition to a general denial, pleaded (1) the change in the location of the sewer by requirement of the city to have made the necessity of cutting the slab whereas originally for the shorter distance it was to have been tunneled, and that the city engineer directed and supervised all of the work on this excavation and ordered that the cement blocks be not replaced when the ditch was refilled; (2) settlement made by the city paying plaintiff a substantial sum; and (3) contributory negligence by riding across the cut at a high rate of speed, knowing its condition at .that time. The reply consisted of general and special denials and allegations as to any payments received from the city being under the workmen's compensation law instead of being in way of settlement.

Timely and appropriate demurrers, motions, objections and exceptions were made throughout the trial to raise and preserve the several questions now and here presented on appeal.

The jury in addition to the general verdict answered seventeen special questions, one of which is of particular importance at this time. It found the negligence of the defendant to consist of only one of the nine acts and omissions alleged, and noted it as stated in the amended petition as follows:

"In failing to exercise due care or any care whatever in filling in said strip in that the fill-in was not tamped or soaked, or if tamped or soaked the same was insufficient, and in that the materials used for the fill-in were not of the proper kind and substance in that they settled, causing a depression in said pavement."

The first point urged by the appellant is that the action is barred by the two-year statute of limitations. The action was brought under R. S. 60-3203 and 60-3204, by the widow and guardian of the minor children of the deceased. R. S. 60-3203 provides for the bringing of such an action for the wrongful act or omission of an-

other by the personal representative of the deceased within two years for the exclusive benefit of the widow and children of the deceased. R. S. 60-3204 provides that when the deceased was a resident of this state at the time of the death and no personal representative has been appointed, the action may be brought by the widow. The original petition failed to state that the deceased was a resident of this state at the time of his death and that no personal representative had been appointed. The accident and death occurred, as stated above, on February 4, 1928. The original petition was filed July 5, 1928. On January 14, 1929, an amended petition was filed, but it likewise failed to mention these facts, and on April 3, 1930, a second amended petition was filed, stating that the deceased was a resident of Butler county, Kansas, at the time of his death and that no personal representative had been appointed.

Appellant insists that the second amended petition is the first one that actually stated a cause of action, and that it was filed more than two years after the accident and death, urging particularly that the former petitions did not show that the widow and guardian had any right to bring or maintain such an action. Appellant cites several early Kansas decisions tending strongly to support this view, among which are the following: *Kansas City v. Hart*, 60 Kan. 684, 57 Pac. 938; *City of Eureka v. Merrifield*, 53 Kan. 794, 37 Pac. 113; *Vaughn v. Railroad Co.*, 65 Kan. 685, 70 Pac. 602; and *Siegrist v. Railway Co.*, 91 Kan. 260, 137 Pac. 975.

In the Hart case the original action was for a claim under the common law, and it was held to be a departure to amend the petition for recovery under the statute.

In the Merrifield case the identical question as here raised was raised upon demurrer as to the right of the plaintiffs as parents to bring the action under the statute without such allegations, and it was held the demurrer to the petition should have been sustained.

In the Vaughn case the question was as to the failure of the proof which did not go to either of these allegations in the petition, and the demurrer to the evidence, it was said, should have been sustained.

The Siegrist case was commenced like the Hart case, as a common-law action by the parents, and neither allegations nor proof covered these two statutory requirements as to residence of the deceased and the nonappointment of representative. The judgment was reversed because the statutory action is the only kind applicable to the facts.

There is quite a distinction between the right of the plaintiff and the cause of action, as stated in 1 C. J. 937, but a strict adherence to such distinction might justly be considered technical. However, there is a very decided difference in the way and manner this question can reach the trial court. Such a petition as the original in this case was certainly demurrable because the plaintiff in her original and first amended petition did not sufficiently allege her right to maintain the action. That, however, presents a widely different proposition from an application to amend a petition so as to overcome such defect. Amendments are allowed under our code when they do not change substantially the claim or defense (R. S. 60-759).

It was held in the case of *Service v. Bank,* 62 Kan. 857, 62 Pac. 670, that—

"The substitution of parties did not change the claim or cause of action nor the object for which the proceeding was brought, and, as the amendment related back to the commencement of the action, the statute of limitations did not thereafter run in favor of the defendants." (Syl. ¶ 2.)

In the recent case of *Friesen v. Hiatt,* 129 Kan. 470, 283 Pac. 644, it was held:

"Rule followed that an amendment of a petition which merely corrected and eliminated inaccuracies in the names and capacity of parties plaintiff did not change the cause of action so as to permit the statute of limitations to operate as a bar to the action where the original petition itself was filed in time." (Syl. ¶ 3. See, also, *Butter Tub Co. v. National Bank,* 115 Kan. 63, 222 Pac. 754; *Walker Implement Co. v. Ellis,* 121 Kan. 405, 247 Pac. 637; *Morris v. Kansas City, L. & W. Rly. Co.,* 118 Kan. 433, 235 Pac. 1047; *Railroad Co. v. Sweet,* 78 Kan. 243, 96 Pac. 657; and *Contracting Co. v. Railway Co.,* 102 Kan. 799, 172 Pac. 527.)

Even the substitution by amendment of a new party plaintiff, who had the right to sue in lieu of one who did not have such right in an action for damages for the wrongful death of another, is not a change of the cause of action, as was held in *Williams v. Bridge & Iron Co.,* 111 Kan. 34, 206 Pac. 327:

"In an action for damages for wrongful death, brought for the benefit of a person lawfully entitled thereto, the substitution, by amendment, of a new party plaintiff who had a right to sue in that behalf, in lieu of a plaintiff who did not have such right, was properly allowed by the trial court; and such substitution did not change the cause of action; nor did the statute of limitations run against the substituted plaintiff during the pendency of the action as originally begun." (Syl.)

Unless the cause of action is changed the statute of limitations will not run against the amendment. The amendment made in the instant case was not a change of the cause of action, or, as our statute (R. S. 60-759) expresses it, no substantial change was made in the claim. The claim all the time was and is for damages for the wrongful death of the husband and father by the negligence of the defendant. The amendment simply alleged the necessary qualifications of the plaintiff to maintain the action, which qualifications had theretofore been omitted from the petition.

Appellant insists that judgment should have been rendered in his favor on the special findings of the jury notwithstanding the general verdict for the reason that they show that the deceased was guilty of contributory negligence and that the finding of negligence on the part of the defendant is not supported by any evidence, and that the negligence which the jury did ascribe to the defendant was not the proximate cause of the injury. Appellant refers to the findings about the rain shortly prior to the accident, that the deceased had been the motorcycle policeman in that city for nine months and that he was seen in that neighborhood about once a week. It is argued from these facts that he knew of the condition of this crossing or by the exercise of ordinary diligence should have known of its condition and have avoided it; further, that he must have been going at an excessive rate of speed to have been thrown so far, and been negligent in going so rapidly as to be unable to stop when he might have seen the unsafe condition of this ditch. On the other hand, it had not been raining long before the accident—only three or four days—and the condition of the crossing may have greatly changed after he last saw it. Also, the pavement showed a scraped mark from about a foot and a half from the crossing to where the motorcycle lay, which might indicate other than excessive speed.

The general verdict for the plaintiff necessarily negatives a finding by the jury of contributory negligence, and it is a question for the determination of the jury from the circumstances of the case, unless the facts raised such a presumption of negligence on the part of the injured party that compel the court, as a matter of law, to conclude that he was guilty of negligence that contributed to his injury.

"The question of contributory negligence is one for the jury to determine from the circumstances of the case, unless the facts raise such a presumption of negligence on the part of the injured person that the court is bound, as a

matter of law, to instruct that no recovery can be had. 'The fact that a person attempts to travel on a street or sidewalk after he has notice that it is unsafe or out of repair is not necessarily negligence.' (*Corlett v. City of Leavenworth*, 27 Kan. 673.) The mere fact that a person knows the sidewalk is defective will not prevent him from using it." (*Langan v. City of Atchison*, 35 Kan. 318, 326, 11 Pac. 38.)

The reasonableness of his conduct depends upon all the surrounding circumstances. The fact that he could have gone north of the manhole, where the cement had not been cut, is not against the reasonableness of his action when he followed the course of the automobiles and the usual travel.

As to the negligence of the defendant, we have no difficulty in finding some evidence to support the finding of the jury on that question. True, the evidence may not show that the material for the fill-in was not the proper kind and substance, but the answer of the jury as to the features of negligence was a compound one containing more than one feature of negligence. We find evidence that the fill-in was not soaked and the tamping and soaking was insufficient so that it settled and caused a depression in the pavement. There was some evidence, although quite indefinite, that the foreman of the defendant arranged with a local party to occasionally fill this ditch as it would sink or become packed down, and that because of such sinking and packing it was determined not to replace the cement at the time the ditch was filled.

We may omit from the consideration any supposed obligation of the defendant, mentioned in his contract with the city, as appellant reasons that contract concerns only the protection of public utilities and not the public generally, and that the record here does not contain all of the terms and conditions of such contract, and still have substantial evidence of negligence.

Appellant contends that the negligence found by the jury was not the proximate cause of the death of deceased, but that there was the distinct and intervening negligence of the city, which was the proximate cause; that the city employees helped fill the sewer ditch and the engineer directed that the slab be not replaced at that time; and that the city later did direct some filling to be put in the ditch. Could the failure to keep the ditch properly filled up be the direct and proximate cause of the injury? Shall we be able to pass by the original cutting of the slab as producing the place of danger? If the contract of the defendant did not obligate him to keep anything

in repair or in any way to be responsible to the public for lack of repair, would he at any rate be exempt from the charge of negligence for cutting the cement in a slab highway and leaving it in an unfinished condition such as would be unsafe to the traveling public? It may be that the city was also negligent in not keeping the ditch in a safe condition, but that would not relieve the defendant.

Appellant further claims the city assumed all liability when it accepted the work of the contractor and attempted to keep the depression in repair. The acceptance of the work for all purposes may or may not be absolute, but there remains the original unsafe condition produced by the defendant and some evidence of the local party carrying out instructions of defendant's foreman, however indefinite the name or description, in filling the ditch from time to time when it needed such attention.

"It is well settled that the mere fact that other causes, conditions, or agencies have intervened between the defendant's negligence and the injury for which recovery is sought is not sufficient in law to relieve defendant from liability. In other words, an intervening cause will not relieve from liability where the prior negligence was the efficient cause of the injury." (45 C. J. 926.)

Where a city ordinance granted a street railway company the right to construct a viaduct, requiring the sidewalk to be kept in repair but was suffered later to be out of repair, although the railway company did not use or need the sidewalk, it was held liable to .one using it for damages. (*Jenree v. Street Railway Co.*, 86 Kan. 479, 121 Pac. 510.)

"It is gross negligence for an agent of a powder company, after shooting an oil well with solidified glycerine, to leave a quart of that explosive lying near the well; and the act of a workman, unskilled in the use of such substances, in removing the dangerous article and placing it in the stone fence of a near-by graveyard to prevent injury to himself and his fellow workmen, does not amount to an unrelated, intervening and efficient cause so as to excuse the powder company from its liability for damages to children who afterwards find the solidified glycerine and are injured by it." (*Clark v. Powder Co.*, 94 Kan. 268, syl. ¶ 1, 146 Pac. 320. See, also, *Bennett v. Bank*, 100 Kan. 90, 163 Pac. 625; *Durst v. Wareham*, 132 Kan. 785, 297 Pac. 675.)

Appellant contends that there was error in the instructions concerning the workmen's compensation act, especially in connection with appellant's view of the case, that the negligence, if any, was that of the city of El Dorado, and if the defendant was in any way negligent the city was with him a joint tortfeasor, and the settlement with the city by the plaintiff for the wrongful death of the

husband constituted a release of the defendant from all liability, claiming in the first instance that the workmen's compensation law should have nothing to do with the case, but if it did, the defendant was entitled to release because the city, his joint tortfeasor, made a settlement with the plaintiff and that the plaintiff thereafter had no right of action against him, but if anyone had, it was the city, and he should have credit on the amount of damages for the amount already paid.

Under the terms of the written contract between the defendant and the city as to his duties in finishing his work, and his obligation to the city to protect it and other persons from loss or injury by reason of his negligence, we cannot concur in his insistence now that the city was a joint tortfeasor with himself. The compensation matter was brought into this case, as the record shows, as a defense, regarding it apparently in the pleadings as it is now regarded in the brief of appellant as a payment in settlement of a joint tort. The reply met this situation and the record indicates that the evidence did the same with the proof by showing that it was in no way connected with any feature of negligence, but was strictly under the workmen's compensation law, which by its own provisions and by the construction placed upon it by this court, is a matter which in no way whatever concerns a third party against whom an action is brought for negligence. The court took this view of it in the instructions, which we think was correct, and further said in the instructions that if a judgment were obtained against the defendant out of that judgment the city, which had paid an amount under the workmen's compensation act, might be reimbursed under the statute as its interests might appear. It is further contended in this connection that the city had no right under the statute to come under the workmen's compensation law in its governmental capacity as distinguished from the employer's trade or business conducted for the purpose of business, trade or gain, and appellant cites many authorities in support of this contention, but none of the constructions so placed have been rendered upon the new law enacted in 1927, which entirely omits from R. S. 44-505, after referring to the businesses to which the law shall apply, the following: "which is conducted for the purpose of business, trade or gain." Section 4 of the new act, which is R. S. 1930 Supp. 44-504, specifically provides for the election of remedies by the employee as a matter between him and the employer when he claims a right to recover on

account of the negligence of a third party, and that his failure to elect shall be equivalent to an election to accept the provisions under the workmen's compensation act and amounts to an assignment of his cause of action in tort against a third party which the "employer may enforce in his own name or in the name of the workman, the liability of such other party for their benefit as their interests may appear."

The court in its instructions to the jury told the jury that the receiving of workmen's compensation money from the city of El Dorado "must not enter your calculation for in the event you find for the plaintiff she must refund to the city of El Dorado any amount you might award her up to the sum of $4,000." We agree with the appellant that in a case like this, which is one to recover for the wrongful death of another by the negligent act of the defendant, that the workmen's compensation act has no place or part in it whatever, but having been placed in the pleadings first by the defendant in the answer and followed by denial in the reply, and further followed by the offer and introduction of evidence on the subject of the amount received and the papers in connection with the payment of the same, the court could not very well avoid giving an instruction concerning the same, or letting the matter stand, since it was claimed by the appellant that instead of being an adjustment of the workmen's compensation allowance it was in fact a settlement of a tort.

The language of the court in the opinion in the case of *Jolley v. United Power & Light Corp.*, 131 Kan. 102, 289 Pac. 962, is appropriate and is as follows:

"As pointed out in the Moeser case, *supra*, it is no concern of the third party what the employer or employee does with reference to a cause of action against the third party. No matter what they may do, the liability of the third party cannot be increased nor diminished by any action of theirs. The third party is in no way prejudiced by the failure to observe the provisions of the statute." (p. 107.)

The Moeser case mentioned was *Moeser v. Shunk*, 116 Kan. 247, 226 Pac. 784, in which the court said—

"When an employee and his employer are within the provisions of the workmen's compensation act and the employee is injured by the negligence of a third person, the employee, or his dependents, if the injury result in death, may proceed to recover compensation from the employer and at the same time may maintain an action for damages against the third party whose negligence caused the injury.

"In such a situation the fact that the employee has proceeded to obtain compensation from his employer, by settlement or otherwise, is no defense to the action for damages, nor can that fact be shown by the defendant upon the trial of such action." (Syl. ¶¶ 3, 4.)

Other instructions given and instructions refused have been considered and no error found concerning the same.

Error is assigned in the introduction of the contract between the city and the defendant for the construction of the sewer, but it was fully pleaded and by the pleadings made essential to determine the rights and privileges of the defendant as well as his obligations and liabilities thereunder to the city and others, of which the plaintiff claimed to be one. We think it was properly introduced.

We find no error in the overruling of the motion for judgment on the answers to the special questions, nor the overruling of the motion for a new trial.

The judgment is affirmed.