No. 33,933

LELAND LONG, *Appellee*, v. THE AMERICAN EMPLOYERS INSURANCE COMPANY, *Appellant*.

(83 P. 2d 674)

Opinion filed November 5, 1938.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellant.

*Paul J. Wall, Carl I. Winsor, John E. Boyer* and *George J. Hondros,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages for personal injuries sustained by plaintiff in the collision of two trucks, alleged to have resulted from the negligence of the driver of the other truck, whose insurer was made a defendant. The jury answered special questions and returned a verdict for $1,887.30. The insurer has appealed and contends, (1) that plaintiff was guilty of contributory negligence as a matter of law, and (2) that plaintiff is not the real party in interest, for which reason he could not maintain the action.

The pertinent facts may be stated briefly as follows: Plaintiff, a truck driver for the Safeway Stores, Inc., was driving east on state highway U. S. 81, which was paved with cement, about ten miles north of Wellington, about 3:30 a. m., May 20, 1936. His truck

was a three-ton Mack tractor, with a twenty-two-foot, six-ton, semi-trailer, the over-all length being about twenty-nine feet. It was in good mechanical condition, with sufficient lights, correctly focused, so that ordinary objects 300 feet ahead on the highway were plainly visible, and was equipped with booster brakes, which applied to the six wheels. Traveling at thirty miles per hour it could be stopped in sixty to eighty feet.

The insured truck was an oil transport owned by the Kent Oil Company and was being operated by Leo Sanborn, an experienced truck driver. He was driving east on the highway above mentioned, ahead of plaintiff. He had driven over a small hill, or rise, in the pavement, and thinking his fan belt was broken and his engine heating, he had turned to the right onto the shoulder of the highway and stopped about 100 feet east of the crest of the rise, with the left rear wheels of his truck about two and one half feet on the pavement. While the size of the truck is not stated, we are informed that it carried a load of between eight and nine tons. The tank was painted aluminum, with the word "Dixie" and the name of the Kent Oil Company printed on the rear end in large black letters. The rear bumper and the bottom of the tank were about two and one half or three feet above the pavement. The jury found the truck had no lights on it, but that it did have reflectors at the rear corners. When the driver stopped he went immediately to look at the fan belt. He had flares in the cab, but had not put them out. He had been stopped three to five minutes when the collision occurred in which plaintiff was injured.

Plaintiff approached this standing truck from the west and had driven up and over the hill or rise in the pavement at a speed of about thirty miles per hour, and had started down the slope toward the standing truck. As he did so he saw the bright lights of a truck approaching from the east, using the north side of the pavement, variously estimated at from two blocks to a quarter of a mile away. Plaintiff was driving near the south side of the pavement. He noticed the standing truck when he was about thirty to forty feet west of it, and turned to his left in an effort to go by it. The tractor part of his truck got by the left rear corner of the standing truck, but the semitrailer struck it about the center. As a result of this collision plaintiff sustained injuries for which he recovered judgment. The amount of the judgment is not seriously questioned, if plaintiff is entitled to recover.

Other pertinent special questions asked the jury, and the answers given, are as follows:

"7. How far away was the rear of the Kent or Dixie Oil Company truck visible in the rays of the lights on the truck plaintiff was driving? A. About thirty or forty feet.

"8. What, if anything, prevented plaintiff from seeing the Kent or Dixie Oil Company truck? A. Approaching car—no lights on Kent Oil Company truck—no flares. Kent truck parked just over crest of rise."

. . . . . . . . . . . .

"11. Of what, if any, negligence was the Kent Oil Company guilty? A. Kent Oil Company truck parked on pavement without lights, and without placing out flares.

"12. Of what, if any, negligence, was the plaintiff guilty? A. None."

Defendant's demurrer to plaintiff's evidence was overruled, as was its motion made at the close of all the evidence for a directed judgment in its favor on the ground that under the undisputed evidence plaintiff was guilty of contributory negligence as a matter of law. Defendant also moved to set aside the jury's answer to a special question in which it found that there were no lights burning on the standing truck. On that point the testimony was directly in conflict. The answer made by the jury was in accord with the testimony of the witnesses called by plaintiff. It cannot be said to be unsupported by the evidence. Defendant also moved to set aside the answers to questions 7, 8, 11 and 12 as being unsupported by the evidence. The argument is directed principally to the answers to questions 7 and 8. Appellant points out that the transport truck was painted aluminum, a color easily seen at night, and that the large letters painted in black on the rear of the tank of the transport should have been seen easily. But there was testimony the tank of the transport was painted "a dull aluminum, rather gray," and that this was the same color, or about the same color, as the cement pavement. Plaintiff testified that when he came over the rise his attention was directed for an instant by the truck lights from the east, and the highway at that time looked open, and that as soon as he could get accustomed to that light he saw the parked truck, and was then within thirty or forty feet of it. Appellant argues the lights of the truck coming from the east were too far away to have any blinding effect. There is a discrepancy in the evidence as to how far it was away, and there is testimony the lights were exceedingly bright, enough to be blinding. There were no lights on the standing truck, a fact which the jury was entitled to find under the evidence, and it is conceded in the testimony that no flares had been

put out. Criticism is made of the jury's finding that the Kent truck was "parked just over crest of rise." Appellant argues the rise was a very small one, not large enough to have any effect on the situation. We do not find in the evidence abstracted an estimate of its height above the pavement to the east or west of it, but we do find that there was a bridge a short distance to the west, and that from the bridge east it was upgrade to the crest of the rise, and counsel for appellee in their brief say that this rise was high enough that one approaching it from the west could not see trucks or cars east of its crest. On the whole, we are unable to say, as a matter of law, that the lights from the truck approaching from the east, or the fact that the transport had stopped just over the crest of a rise, had nothing to do with the question of whether plaintiff used due care. The trial court, much more familiar with the record than it is possible for us to be, approved these findings, and that is a fact to which we must give weight.

Counsel for appellant cite many of our cases holding that one traveling with a motor vehicle on the highway at night should travel at such speed, and have his vehicle under such control, that he can stop his car within the range of the vision afforded by his lights, and have cited also the cases in which the strictness of this rule has not been adhered to because of the peculiar circumstances of the case, and say:

"An examination of the decisions of this court in which recovery has been allowed [in this class of cases] will disclose that in each case one or both of the following two elements were present: (1) Either the parked vehicle was of such a peculiar nature that it could not easily be seen, or (2) the factual conditions were such that it was impossible or impracticable for the plaintiff to have turned out to avoid the collision."

We are inclined to the view that this is a fair analysis of the cases cited, and appellant argues that neither of these conditions was present here. It seems to us this cannot be said, or at least that there is evidence from which the jury might reasonably have found that both conditions prevailed. The standing truck should have had lights on it, and flares should have been put out. Naturally, plaintiff would anticipate that if a truck were standing on the paved highway it would have lights, and flares would be put out. Appellant criticizes the testimony to the effect that the transport was painted "a dull aluminum, rather gray," and that the color differed but little, if at all, from the color of the cement pavement. But that is the evidence. Criticism also is made of the effect of

the lights of the oncoming truck and of the effect of the transport being parked just over the crest of a rise. But there was evidence on those matters from which the jury might reasonably conclude that they had a material effect on the question of plaintiff's negligence, and that the parked vehicle, because of its color and its location, could not be seen easily.

Counsel for appellant argue that in any event plaintiff, when he saw the transport, could have turned to the left and avoided striking it, and it is pointed out that the left rear wheel of the transport was only two and one-half feet on the pavement, and that there was but little, if any, hangover past the wheel; and it is argued that it would have taken but a slight turn to the left to have enabled plaintiff to avoid it. This again presents a factual situation. When plaintiff first saw the transport he was thirty to forty feet from it, about the length, or one and a third times the length, of his truck. There was an oncoming truck. He did turn to the left and got the tractor of his truck past the corner of the transport, but did not succeed in getting his entire truck far enough to the left. Appellant's argument on this point partakes somewhat of the doctrine of the last clear chance. It cannot be said, as a matter of law, that plaintiff had a *clear* chance, under the circumstances, to avoid the transport negligently left standing on the pavement, without lights, and without flares.

On the whole, it seems clear to us that the question of plaintiff's contributory negligence was for the jury.

Appellant next contends plaintiff is not the real party in interest, as that term is defined in our statutes (G. S. 1935, 60-401), and that he had no authority to maintain this action. The following facts give rise to this contention: As a truck driver for the Safeway Stores, Inc., at the time of his injury, plaintiff and his employer were operating under our workmen's compensation act (G. S. 1935, 44-501 to 44-565); that plaintiff made a claim for compensation under the act against his employer for the injuries he sustained at the time of the collision involved in this case, and that the claim for compensation was allowed and paid in full. At the trial of this case plaintiff admitted these facts, but objected to their consideration on the grounds of incompetency and irrelevancy. The trial court sustained this objection. Appellant contends the ruling was erroneous, because of our statute (G. S. 1935, 44-504), which reads:

"When the injury or death for which compensation is payable under this

act was caused under circumstances creating a legal liability against some person other than the employer to pay damage, the injured workman or his personal representative shall within ninety (90) days of the date of receiving said injury elect whether to take compensation under this act or to pursue his remedy against such other person. Such election must be in writing and must be delivered to the employer in person or by registered mail, and the acceptance of compensation by an injured workman shall be construed as a positive election to accept compensation under this section. Failure on the part of the injured employee or his personal representative to file a written election with the employer within ninety (90) days that he will pursue his remedy against the negligent third party shall operate as an election to accept compensation and as an assignment of any cause of action in tort which the employee or his personal representative may have against any other party for such injury or death, and such employer may enforce in his own name, or the name of the workman, the liability of such other party for their benefit as their interests may appear."

The earlier form of our statute on this point (Laws 1911, ch. 218, § 5) was held, in *Moeser v. Shunk,* 116 Kan. 247, 226 Pac. 784, to provide for an equitable adjustment between the employer and employee when the latter is injured by the negligence of a third party; that the employee may proceed to recover compensation from his employer and at the same time maintain an action against the third party whose negligence caused his injury, and that the fact the employee had received compensation from his employer is not a defense to the action for damages, nor can that fact be shown by defendant upon the trial of the action for damages against the negligent third party. Although the statute was changed in 1927 to its present form (G. S. 1935, 44-504), the same construction has been given to the statute. (*Riddle v. Higley Motor Co.,* 122 Kan. 458, 252 Pac. 231; *Jolley v. United Power & Light Corp.,* 131 Kan. 102, 105, 289 Pac. 962; *Early v. Burt,* 134 Kan. 445, 454, 7 P. 2d 95; *Acock v. Kansas City Power & Light Co.,* 135 Kan. 389, 394, 10 P. 2d 877; *Cooke v. Bunten,* 135 Kan. 558, 561, 11 P. 2d 1016; *Bittle v. Shell Petroleum Corp.,* 147 Kan. 227, 231, 75 P. 2d 829.)

Appellant contends, however, that the point it now raises appears not to have been presented to the court, or specifically treated in its opinion, since the amended statute went into effect. The specific points argued are that under the amended statute the workman is required to elect within a stated time whether he will seek compensation from his employer, or pursue his remedy against the negligent third party for damages; that if he does accept compensation this constitutes a binding election and has the effect of assigning his

cause of action for damages against the negligent third party to his employer. It is argued that under the general rule, when a cause of action is assigned, the assignor has no further right therein and cannot maintain an action thereon, citing *Klingberg v. Atchison, T. & S. F. Rly. Co.*, 137 Kan. 523, 21 P. 2d 405. It is pointed out that the court has held that the assignment provided for in this section is not simply of the amount the employer has paid to the workman by way of compensation, but of the entire claim of the workman against the negligent third party. (*Copeland v. Martin Metal Mfg. Co.*, 141 Kan. 725, 42 P. 2d 982; *Kelly v. Johnson*, 147 Kan. 74, 75 P. 2d 209.)

The fact remains, however, that this is a section of our workmen's compensation act, and dealing primarily with the relation between employer and employee. It never was designed to affect the liability of a negligent third party, and it specifically provides, in the event the employee elects to take compensation, the "employer may enforce in his own name, or the name of the workman, the liability of such other party for their benefit as their interests may appear." It seems clear to us from this provision that the action may be maintained in the name of the workman irrespective of whether he has elected to take compensation. Furthermore, the statute indicates a community of interest as between the employer and the employee in the action against the negligent third person, and that the distribution of any sum recovered in such an action shall be made between the employer and the employee "as their interests may appear." Hence, whatever may be the general rule with respect to assignment of claims and the right of assignors thereafter to maintain an action thereon, this statute permits the action against the negligent third party to be maintained in the name of the injured workman, even though he has made an election to take compensation. Therefore the ruling of the trial court was correct.

Since we find no error in the record, the judgment of the trial court is affirmed.